# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| ALESHA W. BRANDENBURG, | : | |
| Plaintiff, | : | |
| | | Case No. 3:09cv00349 |
| vs. | : | |
| | | District Judge Walter Herbert Rice |
| MICHAEL J. ASTRUE, | : | Magistrate Judge Sharon L. Ovington |
| Commissioner of the Social | | |
| Security Administration, | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I.  Introduction

Plaintiff Alesha W. Brandenburg is a registered nurse who has worked as a private duty nurse, a director of nursing, and a quality assurance coordinator.  In 1996, after many years of employment, Plaintiff stopped working due to physical and mental health difficulties.  She eventually sought financial assistance from the Social Security Administration by applying for Disability Insurance Benefits (DIB).  Her DIB application was denied at each level of administrative review.

Plaintiff brings the present case challenging the final denial of her DIB application by Administrative Law Judge Daniel R. Shell, who determined that she was not under a "disability" within the meaning of the Social Security Act, 42 U.S.C. §423(d).  *See* Tr. 27-36.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #5), the

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

Commissioner's Memorandum in Opposition (Doc. #7), the administrative record, and the record as a whole.

Plaintiff seeks an Order reversing ALJ Shell's decision and remanding this matter for payment of DIB. The Commissioner seeks an Order affirming ALJ Shell's decision.

## II.      Plaintiff's Background

Plaintiff contends that she was under a disability beginning on December 6, 1996 and continuing through December 31, 2001, the date she was last insured under the DIB program. (Doc. #5 at 2, n.1). During this relevant time period, Plaintiff was younger than age fifty and was consequently categorized as a "younger person" for the purpose of determining her eligibility for DIB. 20 C.F.R. §404.1563(c).

From June 1978 to December 1996 Plaintiff worked in various nursing positions. She asserts that in December 1996 she could no longer continue working due to multiple chemical sensitivities, severe allergies, and anorexia. (Tr. 91). "Anorexia" refers generally to "loss of appetite. Anorexia is seen in depression, malaise, commencement of fevers and illnesses, disorders of the alimentary tract (esp. the stomach)...." Taber's Cyclopedic Medical Dictionary at 122 (19th Ed. 2001). In the present case, the parties' dispute whether ALJ Shell properly considered Plaintiff's low weight or low body mass index in combination with her gastrointestinal problems.

At the time of the ALJ's hearing she was 5' 5" inches tall and weighed 99 pounds. (Tr. 489-90). Plaintiff testified that this is not her normal height and weight; she was once 5'6" and one-half inches and weighed 110-115 pounds. (Tr. 489). When asked why she lost weight, Plaintiff answered:

> Because nutritionally I'm allergic to so much, soys and wheats. I'm allergic to glycerin which is in a lot of products and also the medications. Yeast, I am allergic to. I just, if I eat something it goes through me. It's not unusual for me to go, unfortunately, five to seven times a day with my bowel movements. Sometimes I can't even control my bowel and get incontinent with it. I just don't absorb.

2

(Tr. 489). Plaintiff's medical records document that her weight fluctuated between 95 pounds and 107 pounds during the relevant time period. *See* Tr. 252, 255, 257, 262, 265, 268, 272, 369.

Plaintiff testified that she had lost height due to osteoporosis. (Tr. 469). She noted, "I was born allergic to milk and didn't get the calcium, and I have to take Cortef, which is like a steroid to try to help your immune system." *Id*. At the time of the ALJ's hearing in June 2006, Plaintiff had been on some type of steroid since 1999. *Id*.

Plaintiff also testified during the ALJ's hearing that she suffers from severe allergies to many things that cause her significant breathing problems and congestion. She explained, "Lots of things bring it on. Just the air in the room that I'm in and the dust in the room. People that I'm around. I can't tolerate people's perfumes and men's colognes. It takes my breath away...." (Tr. 486). She continues, "Right now I have trouble concentrating when I try to even read a book myself...." *Id*. When asked about any limitations on her ability to read, she testified that her vision was limited:

> I just had my eyes checked again. The vision is declining. They gave me Patanol and when I use my Patanol drops I have to be careful. They can't go down into my tear ducts. I actually have to close my tear duct and then put the eye drops in just to try to help the eye focus a little bit and with irritations. My eyes just come on. I don't know when it's going to hit me and my vision will probably go out. My hearing goes and my coordination. I usually have to have at least one person assist which, unfortunately, is depressing, but that's the way that I'm leaning.

(Tr. 491).

Plaintiff obtains some relief from her breathing difficulties when she wears a charcoal breathing mask. (Tr. 484). She began wearing the breathing mask the year before the ALJ's hearing in June 2006. (Tr. 486). Plaintiff testified, "I also have a cough. The cough is so bad that I broke a rib last year with it and the breathing is deteriorating, unfortunately, so is my energy level." (Tr. 486).

Plaintiff's ability to work during the relevant time period (12/6/96 through

3

12/31/01) became problematic because she had less energy, pain in the joints of her hands, and pain in her hips and knees. (Tr. 487-88). She experienced pain throughout the day, ninety percent of the time. She is allergic to nearly all pain medications, although she gets a little relief when she takes Helparin. (Tr. 488).

Plaintiff also used a vest prescribed or ordered for her by a pulmonary physician, Dr. Rossi. The vest assisted Plaintiff with breathing by helping her bring up phlegm; her her lungs were too weak to do this without the vest. (Tr. 490).

Plaintiff did not eat three meals a day. (Tr. 492). She explained, "I try to eat as ... much as I can, sometimes every couple hours. I'm just trying to put in [sic] because my physicians tell me if I don't eat I'm going to die, unfortunately, and to try to each as much as I can. They've talked about putting actually a port in my chest, but the physicians can't agree on that." *Id*. She further explained that the port would be "for IV infusions. My veins are shot. I only have one vein left and the doctors are afraid if they put the port in and I get infected, then I'm going to die, unfortunately, because of that because they can't give me antibiotics to treat the infection so I'm in a catch-22." (Tr. 492).

Plaintiff typically spent her free time "just sitting, changing positions." (Tr. 490). She used to be very active, but she could no longer engage in her favorite activities, such as gardening. (Tr. 490).

When asked if she could perform any kind of work – for example, a job sitting by herself watching security monitors to see if any security problems occur or a telephone solicitation job – Plaintiff testified, "No because my breathing doesn't allow me. Sometimes I can't even talk to my own family on the phone, and when it does my, when my central nervous systems hit I don't know who I am. I am very ... confused." (Tr. 495). During the relevant time period, her confusion could occur daily and last twenty-four to forty-eight hours. (Tr. 496).

### III.   DIB And The Administrative Decisions
#### A.   The "Disability" Requirement

4

In the mid-1950s Congress instituted the DIB program as part of the Social Security Act's broad effort "to obviate, through a program of forced savings, the economic dislocations that may otherwise accompany old age, disability, or the death of a breadwinner." *Califano v. Boles*, 443 U.S. 282, 283, 99 S.Ct. 2767, 2769, 61 L.Ed.2d 541 (1970). The DIB program is "contributory in nature and [is] designed to prevent public dependency by protecting workers and their families against common economic hazards." *Mathews v. Castro*, 429 U.S. 181, 186 n.6, 97 S.Ct. 431, 434, 50 L.Ed.2d 389 (1976). Such economic hazards confront workers whose serious health problems force them into what is essentially "involuntary, premature retirement." *Id*.

DIB is available only to those who are under a "disability" within the meaning of the Social Security Act. *See* 42 U.S.C. §423(a); *see also Bowen v. City of New York*, 476 U.S. 467, 470 (1986). To be under a DIB-qualifying "disability," an applicant must show that he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment...." 42 U.S.C. §423(d)(1)(A). The applicant's physical or mental impairment(s) must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."[2] *Bowen*, 476 U.S. at 470 (quoting 42 U.S.C. §423(d)(2)(A)).

**B.     ALJ Shell's Decision**

To qualify for DIB Plaintiff needed to show that she was under a disability before her date last insured – December 31, 2001. *See* 42 U.S.C. §423(a)(1)(A); *see also Beety-Monticelli v. Commissioner of Soc. Sec.*, 343 Fed. Appx. 743, 745 (3rd Cir. 2009); *Cunningham v. Astrue*, 2010 WL 22286 at *2 (6th Cir., Jan. 5, 2010).

ALJ Shell considered the evidence under the applicable sequential evaluation

---

[2] Impairments also must be expected to either cause death or last at least twelve months. *See* 42 U.S.C. §423(d)(1)(A); *see also Bowen*, 476 U.S. at 469-70.

5

procedure, stopping upon completion of Step Four.  *See* Tr. 27-36; *see also* 20 C.F.R. §404.1520(a)(4).

At Step Two ALJ Shell concluded that Plaintiff's severe impairments consisted of "multiple chemical sensitivities and severe allergies."  (Tr. 30).

ALJ Shell concluded at Step Three that Plaintiff's height and weight did not meet or medically equal the criteria of an impairment in the Listings.[3]  (Tr. 31).  In doing so, the ALJ concluded that Plaintiff's impairments did not meet or equal Listing 5.08, which addresses weight loss due to gastrointestinal problems.

At Step Four ALJ Shell concluded that Plaintiff could perform her past relevant work as a director of nursing and a quality assurance coordinator.  (Tr. 31-36).  This conclusion ended the ALJ's sequential evaluation because Plaintiff's ability to perform her past relevant work mandated the conclusion she was not under a disability.  20 C.F.R. §404.1520(a)(4)(iv) ("If you can still do your past relevant work, then we [the Social Security Administration] will find that you are not disabled."); *see also* §404.1520(f).

The ALJ issued his non-disability decision on June 13, 2007.  (Tr. 36).

### C.     **The Appeals Council's Decision**

In August 2007 Plaintiff sought review of the ALJ's decision by the Social Security Administration's Appeals Council.  (Tr. 471-77).  Two years later, in August 2009, the Appeals Council issued a Notice of Action stating, in pertinent part:

**We Have Denied Your Request For Review**

> We found no reason under our rules to review the Administrative Law Judge's decision.  Therefore, we have denied your request for review.
>
> This means that the Administrative Law Judge's decision is the final decision of the Commissioner of Social Security in

---

[3] The Listing are found in the Commissioner's Regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1.

6

>your case.
>
>**Rules We Applied**
>
>>We applied the laws, regulations and rulings in effect as of the date we took this action....
>
>* * *
>
>**What We Considered**
>
>>In looking at your case, we considered the reasons you disagree with the decision and the addition evidence listed on the enclosed Order of Appeals Council.
>>
>>We found this information does not provide a basis for changing the Administrative Law Judge's decision....

(Tr. 6-9)(emphasis in original).

The Appeals Council did not deny Plaintiff's Request for Review until August 26, 2009. Consequently, despite the fact that the ALJ issued his non-disability decision two years earlier, the ALJ's decision did not become final until August 26, 2009. *See id.*

As will be discussed further, the date when the ALJ's decision became final is highly significant in this case. Between the date of the ALJ's original decision and the date that decision became final, the Social Security Administration revised its Listing for digestive disorders in a manner favorable to Plaintiff.

**IV.    Discussion**

    **A.    Judicial Review**

Judicial review of an ALJ's decision proceeds along two lines: " whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r. of Social Security*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r. of Soc. Sec.*, 478 F3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or

disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Rogers v. Comm'r. of Social Security*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Social Security*, 375 F.3d 387, 390 (6th Cir. 2004). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance..." *Rogers*, 486 F.3d at 241.

The second line of judicial inquiry – reviewing for correctness the ALJ's legal criteria – may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r. of Social Security*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746 and citing *Wilson v. Comm'r. of Social Security*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

    **B.**    **Listing 5.08**

At Step 3 of his sequential evaluation, ALJ Shell ruled against Plaintiff as follows:

> The claimant does not have an impairment that meets Listing 5.08, because she did not have evidence which met the required weight for an individual of her height, as required by Section 5.08, prior to her date last insured.

(Tr. 31).

Plaintiff contends that the ALJ erred at Step Three of his sequential evaluation by finding that she did not meet or equal the requirements of Listing 5.08. She reasons: (1)

the ALJ's conclusion that she fails to meet the weight-loss requirement of Listing 5.08 is not supported by objective medical evidence; or, alternatively, (2) her condition equals Listing 5.08.

The Commissioner contends that Plaintiff mistakenly applies the current version of Listing 5.08 rather than the less inclusive version applicable at the time of the ALJ's decision in June 2007.

By considering Plaintiff's weight and height, ALJ Shell applied the version of Listing 5.08 in existence at the time of his June 2007 decision. *See* Tr. 31. Under the prior version claimants had to show, in part, that their height and weight were equal to or less than the values specified in certain Tables set forth in Listing 12.08, as the ALJ recognized. *See* Tr. 31; *see also* Listing 5.08, 20 C.F.R. Part 404, Subpart P, Appendix 1 (Revised as of April 1, 2007).

Yet, as the Commissioner accurately explains, after the ALJ's issued his decision in June 2007, the Social Security Administration revised the digestive-system Listings – including Listing 5.08. The revision eliminated Listing 5.08's height/weight criteria and replaced it with criteria based on BMI (Body Mass Index). The BMI-based version of Listing 5.08 states:

> *Weight loss due to any digestive disorder* despite continuing treatment as prescribed, with BMI of less than 17.50 calculated on at least two evaluations at least 60 days apart within a consecutive 6-month period.

Listing 5.08, 20 C.F.R. Part 404, Subpart P, Appendix 1 (2009) (italics in original).[4]

The effective date of this new BMI-based version of Listing 5.08 is critical in the present case because it became effective on December 18, 2007[5] – after the ALJ's

---

[4] For more information regarding why the Social Security Administration changed Listing 5.08, see Revised Medical Criteria for Evaluating Digestive Disorders 72 Fed. Reg. 59398-01, 59404, 2007 WL 3032493 (2007).

[5] *See* Revised Medical Criteria for Evaluating Digestive Disorders, 72 Fed. Reg. 59398-01, 2007 WL 3032493 (2007).

decision but before the Appeals Council's denial of Plaintiff's request for review.

The Commissioner contends, "Plaintiff's current attempt to rely on the newer regulation, not in effect during the relevant period and at the time of the ALJ's decision, is unavailing and should be rejected.... The ALJ was not wrong, he applied Listing 5.08 in effect in 2007. Whether Plaintiff satisfies the listing in its later version is not before the Court, and certainly was not before the ALJ." (Doc. #7 at 8).

Although the ALJ applied the version of Listing 5.08 in effect at the time of his June 2007 decision, his decision did not become final until more than two years later, in August 2009, when the Appeals Council denied Plaintiff's Request for Review. The ALJ's decision therefore became final for purposes of judicial review in August 2009. *See Sims v. Apfel*, 530 U.S. 103, 107, 120 S.Ct. 2080, 2083, 147 L.Ed.2d 80 (2000). If this were a more administratively typical case, judicial review would focus only on the ALJ's decision. *See id*.; *see also Casey v. Secretary of Health & Hum. Svcs*., 987 F.2d 1230, 1233 (6th Cir. 1993). This case, however, is unusual.

In its August 2009 denial of Plaintiff's request for review, the Appeals Council explained, "We applied the laws, regulations and rulings in effect as of the date we took this action." (Tr. 6). By applying the version of Listing 5.08 in effect in 2009, the Appeals Council by its own statement applied the criteria in the newer version of Listing 5.08, meaning it considered Plaintiff's BMI rather than considering her weight/height under the former Listing 5.08.

The Appeals Council's application of BMI-based Listing 5.08 was consistent with the Social Security Administration's explanation of the updated versions of the digestive-disorders Listings. The Social Security Administration explained:

When will we start to use these final rules?

We will start to use these final rules on their effective date [December 18, 2007]. We will continue to use our prior rules until the effective date of these final rules. When these final rules become effective we will apply them ... to claims pending before us, as we describe below.

10

> As is our usual practice when we make changes to our regulations, we will apply these final rules on or after their effective date when we make a determination or decision, including those claims in which we make a determination or decision after a remand to us from a Federal court. With respect to claims in which we have made a final decision and that are pending judicial review in Federal court, we expect that the court would review the Commissioner's final decision in accordance with the rules in effect at the time the final decision of the Commissioner was issued. If a court reverses the Commissioner's final decision and remands the case for further administrative proceedings after the effective date of these final rules, we will apply the provisions of these final rules to the entire period at issue in the claim in our new decision issued pursuant to the court's remand.

72 Fed. Reg. at 59398 (Oct. 19, 2007) (emphasis added). Accepting the Social Security Administration's expectation would lead this Court to apply the same version of Listing 5.08 applied by the ALJ in June 2007 – i.e., the version "in effect at the time the final decision was issued." *Id*. Yet this would conflict with the Appeals Council's statement that it applied the Regulations in effect in August 2009. (Tr. 6).

Plaintiff is therefore faced with conflicting, or at least confusing, administrative decisions: the ALJ's consideration of whether her weight/height met the criteria of former Listing 5.08 versus the Appeals Council's consideration of whether her BMI met or equaled the version of Listing 5.08 effective in 2009.

Although the retroactive application of new Regulations, when permissible, often results in a denial of benefits, *see, e.g., Combs v. Commissioner of Soc. Sec*., 459 F.3d 640 (6th Cir. 2006), in the present case, application of BMI-based Listing 5.08 favors Plaintiff. Her medical records reveal that her weight fluctuated between 95 pounds and 107 pounds during the relevant time period. *See* Tr. 252, 255, 257, 262, 265, 268, 272, 369. As Plaintiff explains, and the Commissioner does not specifically refute, "According to the formula provided by Social Security, an individual of Ms. Brandenburg's height (5'6" or 66") will have BMI of less than 17.50, if [her] weight is 108 pounds or less." (Doc. #5 at 13). Plaintiff therefore met the BMI element of the applicable version of Listing 5.08.

Accordingly, Plaintiff's application of the BMI-based Listing 5.08 – which is the same version of Listing 5.08 applied by the Appeals Council – is warranted and exposes a conflict between the legal criteria the ALJ applied at Step 3 of the sequential evaluation procedure and the legal criteria the Appeals Council applied in 2009.

## V.      **Remand for Further Proceedings**

If the ALJ failed to apply the correct legal standards or his factual conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits.  Under Sentence Four of 42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991).  Remand is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding.  *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is warranted in the present case because, as Plaintiff's detailed description of that evidence reveals, *see* doc. #5 at 29-34, 39-43 (and records cited therein), the administrative record contains overwhelming evidence, or strong evidence while contrary evidence is weak, *see Faucher*, 17 F.3d at 176, showing that – during the relevant time period – she met or equaled the criteria of the BMI-version of Listing 5.08.  Contrary to the Commissioner's contention, the issue of whether Plaintiff meets or equals BMI-based Listing 5.08 is before this Court due to the Appeals Council's application of that more recent Listing.  *Cf. Wilson v. Commissioner of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)("The Supreme Court has long recognized that a federal agency is obliged to abide by the regulations it promulgates." (citing in part *Vitarelli v. Seaton*, 359 U.S. 545, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959)).

In addition, the Social Security Administration explained, when issuing its final rule promulgation, that on a judicial remand, it would apply the newer version of the

digestive-disorders Listings.  Specifically, the Social Security Administration promised: "If a court reverses the Commissioner's final decision and remands the case for further administrative proceedings after the effective date of these final rules, we will apply the provisions of these final rules to the entire period at issue in the claim in our new decision issued pursuant to the court's remand." <u>Revised Medical Criteria for Evaluating Digestive Disorders</u>, 72 Fed. Reg. 59398-01, 2007 WL 3032493 (2007).  Remand for further administrative evaluation of the medical evidence and the record is unwarranted in the present case because the record contains overwhelming evidence or strong evidence while contrary evidence is weak that Plaintiff met or equaled the criteria of BMI-based Listing 5.08 during the relevant time period.

### IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's final non-disability decision be vacated;

2. Plaintiff's case be REMANDED to the Social Security Administration under Sentence Four of 42 U.S.C. §405(g) for payment of DIB consistent with the Social Security Act; and

3. The case be terminated on the docket of this Court.

June 3, 2010                                                          s/Sharon L. Ovington
                           Sharon L. Ovington
                         United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Am,* 474 U.S. 140 (1985).